Ducker, Judge:
The claimant, Oscar Vecellio, Inc., a corporation, filed with the Attorney General of West Virginia on May 24,1966 its claim in the total sum of $46,564.80 for alleged items of extra expenses and costs for which it was not paid by the State Road Commission in connection with the contract for grading, draining, basing and paving specified for road project U-282 (8) -C-2, commonly known as the “Clarksburg Expressway,” in Harrison County, West Virginia. The claim was heard and evidence taken by and before the Attorney General of West Virginia, Claims Division, beginning on July 14, 1966 in accordance with the law as contained in Chapter 14, Article 2, Section 3, of the Code of West Virginia, and was pending without decision by the Attorney General when this Court took jurisdiction.
The contract awarded to the claimant by the State Road Commission was originally calculated to be in the sum of $590,862.50 and upon the determination of the final estimate the amount paid the claimant was the sum of $694,055.60, which included, according to the final estimate, an overpayment by the State of West Virginia in the sum of $5,351.80. This final estimate covered the period of work from December 21, 1960 to July 8, 1965 and is set forth as the Road Commission Exhibit No. 6 with the transcript of the evidence. Practically all of the work under the contract was performed between the middle of 1959 and the middle of 1961, and all exhibits filed by the claimant with its testimony are dated in 1959 except as to a *48 quantity of materials estimate made by Wheeler Associates, Inc. in December 1965, approximately six months prior to the filing of the claim with the Attorney General. The State Road Commission denied the validity of claimant’s claim as to every detail.
There seem to be no particular legal questions involved in the claim except the effect of the lack of written evidentiary proof by the claimant of the several items for which he demands payment and the effect of such lack of proof in the consideration by this Court of the several claims of the claimant, and except to say that such lack of written change orders or supplemental agreements in writing in which the State Road Commission agreed to recognize and pay for the claims of the claimant is in our opinion a material, if not fatal, defect in such proof. However, the Court in this case is not confining itself to strict legal rules of admissibility of evidence but is being governed primarily by the question of the justness of the claim, as viewed by it from all the evidence adduced. However, we do not sanction laxity on the part of contractors and others dealing with the State who should proceed orderly in their transactions and obtain proper authority in writing for additions to or changes in contracts.
The claimant’s claim of $46,564.80 is made up of nine separate items as follows:
(1) $787.50 for an error claimed in calculating the amount of unclassified excavation;
(2) $6,174.75 to cover the cost of removal of additional dirt occasioned by an alleged slide in the hillside adjacent to the work contracted for;
(3) $3,449.25 for 4,599 cubic yards of stone and rock removed from outside the borrow pit area;
(4) $8,000.00 for cost of obtaining granular material to meet specifications for concrete cribbing;
(5) $1,800.00 cost of double handling of material due to a foot bridge obstruction;
(6) $3,000.00 cost of building a detour and maintaining traffic around bridge over expressway;
(7) $5,316.00 for extra work required to dispose of sewers and sewer water and rental of equipment for such purposes;
*49 (8) $9,885.00 on account of an alleged delay of approximately one month by the State Road Commission in determining whether material stock piled by bridge boulders would compact according to the Road Commission specifications as to moisture contents;
(9) $8,152.30 for 500 cubic yards more concrete than the estimated quantities, the same being the amount claimant claims it was penalized because of State Road Commission’s decision that the concrete did not meet specifications.
There are several factors which have weighed more or less in this Court’s consideration of the several items of this claim, one of which is that the State Road Commission has allowed and paid to the claimant more than $100,000.00 over and above the original contract amount, which amount the Road Commission says is an overpayment of $5,351.80. The testimony of the principal witness for the claimant, its Project Manager, was in regard to transactions with or complaints to the State Road Commission officers or employees about six or seven years prior to the filing of the claim before the Attorney General and was made principally from what he described as his or the claimant’s diary of the progress of the work done. There were no change orders or other writings by which the State Road Commission recognized or bound itself to pay for the items claimed by the claimant, although there were some letters purporting to complain of and to ask for extra payment for several of the items. There were few disinterested witnesses testifying as to important facts relating to the items of the claim of the claimant, and there appears to have been no objection to or rebuttal at the time the final settlement was made in July 1965, which final settlement was made according to State Road Commission witness J. M. Moss, who was the Senior Office Engineer in the Central Construction Office of the State Road Commission, and who testified that such final estimate showed all of the payments made to the claimant and the resulting overpayment made by the state, and whose testimony was that “the amount due to the State of $5,351.80 is the result of the final review that has been made as the result of a meeting of the personnel of the district and representatives of the contractor.”
*50 Reviewing the testimony of the witnesses for both the' claimant and the State, we find considerable conflict with no real preponderance on the side of the claimant and clearly a great lack of anything in the nature of documentary evidence, unless self-serving diaries can be so classified. We fail to see from the over 200 pages of the transcript of the testimony clear proof that the claimant was either substantially misled or wrongly advised as to his obligations under the contract, or that the State Road Commission agreed to the matters involved in claimant’s petition. To review and specify in detail or outline the insufficiency of the statements of the witnesses is not in order because statements taken out of context would not be fair and we cannot and will not attempt to burden this opinion with lengthy quotes from the testimony. Being triers of the facts as well as judges of the applicable law we must reach our decision on the substance as well as on the details of the evidence introduced. We do not infer any lack of verity on the part of any witness, but we have reached the conclusion that the claimant has not as to any of the separate nine items of its claim adequately proved that there has been either a breach of the contract on the part of the State Road Commission or that the claimant has been unfairly treated, or that the claimant has not been fully compensated for its work and services under its contract on the project.
It is the conclusion of this Court that the claimant has not proven a clear obligation for further compensation from the State, and this Court is of the opinion and it is its judgment that the claim of the claimant in this case be wholly disallowed.
Claim Disallowed.